STATE OF LOUISIANA

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
MAY 3 0 2003
ROBERT H. SHEMWELL, CLERK
BY ncm DEPUTY

15th JUDICAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

NO.: 2003 2024      DIVISION "C"

JUDGE DOHERTY
MAGISTRATE JUDGE HILL

TYRELLE DALY

VERSUS

CV03-1018

ORTHO-MCNEIL PHARMACEUTICAL, INC., DR. STEVEN SNATIC, MD, MICHELLE CRAIN, RN, FNP-C,

FILED: _____    _____ DEPUTY CLERK

## PETITION FOR DAMAGES

The petition of Tyrelle Daly, who is a person of full age of majority, and who is domiciled in this Parish, respectfully represents that:

1.

A.  Made Defendants herein are:

   (i) *Ortho-McNeil Pharmaceutical, Inc., (Ortho-McNeil)* a Delaware corporation which does business in the State of Louisiana by distributing, marketing, selling and/or profiting from Topamax in the State of Louisiana;

   (ii) *Dr. Steven Snatic, MD,* who is a resident of this parish and state;

   (iii) *Michelle Crain, RN, FNP-C,* who is a resident of this parish state.

2.

Ms. Daly sought medical care with defendant, Dr. Steven Snatic, MD, for her migraine headaches. She made repeated visits to Dr. Steven Snatic.

3.

Defendant, Ms. Michelle Crain was an employee of Dr. Snatic. The Plaintiff saw defendant, Michelle Crain, RN, FNP-C in Dr. Steven Snatic's office. Defendant, Michelle Crain gave the plaintiff a sample of Topamax (Topiramate) for her migraine headaches.

4.

The sample of Topamax had the label attached. The Control Number on the bottle was 91P0418E. The attached label did not mention anything about the possibility of the plaintiff developing a ciliary body effusion or glaucoma.



**5.**

The defendants, Ms. Crain and Dr. Snatic did not warn Ms. Daly that she could develop eye problems by ingesting Topamax.

**6.**

Ms. Daly took the Topamax as directed and developed severe eye pain and blurred vision.

**7.**

Ms. Daly immediately sought medical care from her treating Ophthalmologist, Dr. Cheryl Neu, for her blurred vision and eye pain. Her examination revealed 20/200 vision in Ms. Daly's right eye and 20/400 vision in the left eye. Her intraocular pressures were 35 in the right eye and 52 in the left eye. Ms. Daly was diagnosed with a condition called a ciliary body effusion.

**8.**

Ms. Daly was given medications to reduce her eye pressure and instructed to follow up with Dr. Neu the next day. Upon re-examination by Dr. Cheryl Neu, it was noted that there was no improvement in Ms. Daly's eye pressures or vision. Dr. Neu performed a surgical laser iridectomy in an attempt to relieve the intraocular pressure. There was no change in Ms. Daly's intraocular pressure after the procedure.

**9.**

Dr. Neu then consulted a glaucoma expert at LSU who stated that recent medical literature had linked Topamax with a condition called a ciliary body effusion, which triggered glaucoma in some patients.

**10.**

Ms. Daly was subsequently admitted to Our Lady of Lourdes Hospital with the diagnosis of Narrow Angle Glaucoma in both eyes. She received intravenous steroids and was treated with Diamox. With this treatment, her eye pressures returned to near normal within two (2) days and her vision improved in one (1) week.

**11.**

Ms. Daly was discharged from Our Lady of Lourdes Hospital and Dr. Cheryl Neu concluded that this episode could increase her risk for open angle glaucoma in the future.

**12.**

Ms. Daly has continued to suffer discomfort, pain and has had vision problems.

## 13.

Ms. Daly was examined by Dr. David A. Newsome on November 27, 2002. She again saw Dr. Newsome on February 17, 2003, when he performed an optical coherence tomographic scanning. This test revealed loss of nerve fibers and an increased optic nerve cupping in both of her eyes. The damage appeared to be greater in the right eye than in the left eye. Overall, Ms. Daly has lost 30% of the nerve fibers in her right eye and approximately 25% of the nerve fibers in her left eye.

## 14.

Dr. Newsome concluded that Ms. Daly has permanent vision problems as a result of her ingestion of Topamax. He also stated the she is more susceptible to damage from eye pressures that might otherwise be considered normal.

## 15.

Defendants, Dr. Snatic and Ms. Michelle Crain knew or should have known that the ingestion of Topamax could cause the plaintiff to develop this severe and debilitating eye condition. Defendants, Dr. Snatic and Ms. Michelle Crain did not warn or inform plaintiff that she could develop this severe and debilitating eye condition. The plaintiff developed a severe and debilitating eye condition as a direct and proximate result of defendants, Dr. Snatic and Ms. Michelle Crain's failure to warn her of the dangers associated with Topamax.

## 16.

Defendant, Ortho-McNeil manufacturers, markets and distributes the prescription drug Topamax.

## 17.

The Topamax manufactured and/or distributed by defendant, Ortho-McNeil was defective because of Ortho-McNeil's failure to warn the plaintiff that she could develop this severe and debilitating eye condition.

## 18.

The Topamax manufactured and/or supplied by the defendant, Ortho-McNeil, was defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary customer would expect.

**19.**

The Topamax manufactured and/or supplied by the defendant, Ortho-McNeil, was defective due to inadequate warnings or instruction because the defendant, Ortho-McNeil, knew or should have known that the Topamax created a risk of harm to consumers and the manufacturing defendant, Ortho-McNeil, failed to adequately warn of said risks.

**20.**

The Topamax manufactured and/or supplied by the defendants was defective due to inadequate warning and/or inadequate testing.

**21.**

The Topamax manufactured and/or supplied by defendants was defective due to inadequate post-marketing warning or instruction because, after the defendants knew or should have known of the risk of injury from Topamax, they failed to provide adequate warning to users or consumers of the Topamax and continued to promote the product.

**22.**

Ms. Daly has sustained severe injuries, as the producing cause or legal result of the defective condition of Topamax as manufactured and/or supplied by the defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of the defendants described herein.

**23.**

Ms. Daly has required reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses. These injuries will require her to obtain future medical and/or hospital care, attention, and services in an amount that is not yet ascertained.

**24.**

The defendants expressly warranted that Topamax was safe, well accepted, and would not present any severe side effects. These warranties induced Ms. Daly into taking the Topamax. Ms. Daly developed a severe and debilitating eye condition as direct result of the fact that defendant, Ortho-McNeil, knew that the ingestion of Topamax could cause severe and debilitating eye conditions constitutes a breach of its express warranty that Topamax was safe, well accepted and would not present any severe side effects.

### 25.

Topamax did not conform to these express representations because Topamax is not safe and has high levels of serious side effects, including side effects such as the severe and debilitating eye condition suffered by Ms. Daly.

### 26.

Ms. Daly has sustained severe injuries as a direct and proximate result of the defendants breach of these express and implied warranties.

### 27.

At the time, the defendants marketed, sold, and distributed Topamax for use by the plaintiff, the defendants knew of the use for which Topamax was intended and implied and warranted the product to be of merchantable quality and safe and fit for such use.

### 28.

The plaintiff reasonably relied upon the skill and judgment of the defendants, as to whether the Topamax was a merchantable quality, and safe and fit for its intended use.

### 29.

Contrary to such implied warranties, Topamax was not of merchantable quality, or safe or fit for its intended use, because this product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

WHEREFORE, plaintiff, Tyrelle Daly, prays that there be a judgment in her favor and against the defendants, Ortho-McNeil Pharmaceutical, Inc., Dr. Steven Snatic, MD, and Ms. Michelle Crain, RN, FNP-C, in an amount that will adequately compensate the plaintiff for her injuries, for all costs incurred in the prosecution of the matter, and for all legal interest from the date of judicial demand until paid.

Respectfully submitted,

THE ANDRY LAW FIRM
Jonathan B. Andry, LA Bar No. 20081
610 Baronne Street
New Orleans, LA 70113
(504) 586-8899 Telephone
(504) 586-8933 Facsimile

COUNSEL FOR TYRELLE DALY

PLEASE SERVE:

Dr. Steven Snatic, MD
501 W. St. Mary Blvd., Suite 404
Lafayette, Louisiana 70506

Ms. Michelle Crain, RN, FNP-C
At the offices of:
501 W. St. Mary Blvd., Suite 404
Lafayette, Louisiana 70506

Ortho-McNeil Pharmaceutical, Inc.
*through its Agent for Service of Process*
   *via the Louisiana Long Arm Statute.*
THE CORPORATION TRUST COMPANY
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801